UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WILLIAM F. SOPER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 04-479-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

I.

**PROCEEDINGS**

Plaintiff filed this action on April 19, 2004, seeking review of the Commissioner's denial of his application for Disability Insurance Benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on October 27, 2004. Pursuant to the Court's Order, the parties filed an Amended Joint Stipulation[1] on August 1, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Amended Joint Stipulation under submission without oral argument.

---

[1] Plaintiff previously filed a Joint Stipulation on July 25, 2005, which he voluntarily withdrew on the ground that it was prematurely filed.

## II.

## **BACKGROUND**

Plaintiff was born on November 16, 1942. [Administrative Record ("AR") at 26, 65.] He has a high school education. [AR at 26, 65, 88.] His previous work experience includes working for a telephone company as an installer and repairman, and as a representative for his union. [AR at 26-27, 83.]

On June 21, 2000, plaintiff filed an application for Disability Insurance Benefits alleging that he had been unable to work since January 1, 1996, due to heart problems. [AR at 65-67, 81-82.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on November 7, 2001, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 23-40.] After the hearing and review of the record, the ALJ found that plaintiff suffers from a severe impairment of the cardiovascular system, but retains the residual functional capacity[2] to perform medium work.[3] [AR at 12-16.] The ALJ concluded, however, that plaintiff could no longer engage in climbing, and therefore could not perform his past relevant work as a telephone installer/repairman.[4] [Id.] The ALJ then referred to the Medical-Vocational Rules and, taking into account plaintiff's age, education, vocational profile, and residual functional capacity, determined that he was not disabled. [AR at 15-16.]

After the Appeals Council denied plaintiff's request for review, plaintiff filed suit in federal court (Case No. CV 02-2645-PLA), alleging that the ALJ had erred in reaching his decision. On February 21, 2003, this Court determined that the ALJ improperly determined the range of work that plaintiff could perform and improperly dismissed plaintiff's testimony regarding fatigue. The

---

[2] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

[4] In the first decision, the ALJ only found that plaintiff's previous job as a telephone installer/repairman qualified as past relevant work. [AR at 16.]

1  matter was remanded to the ALJ for further proceedings. [AR at 284-94.]  A subsequent hearing
2  was held on November 12, 2003, at which plaintiff again appeared with counsel and testified on
3  his own behalf.  A vocational expert also testified. [AR at 261-82.] The ALJ issued a decision on
4  December 4, 2003, denying plaintiff's claim on the basis that he maintained the ability to perform
5  medium work with certain restrictions, and that plaintiff's allegations regarding his fatigue and
6  other limitations were not "totally credible." [AR at 255-60.] When the Appeals Council denied
7  review on February 20, 2004, the ALJ's decision became the final decision of the Commissioner.
8  [AR at 247-49.]

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

/
/
/
/

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.   THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the

4

sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of his disability. [AR at 260.] At step two, the ALJ concluded that plaintiff has severe impairments of the cardiovascular system. [AR at 256.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 260.] The ALJ further determined that plaintiff retains the residual functional capacity to perform medium work with certain restrictions.[5] [Id.] At step four, the ALJ determined that plaintiff is able to perform his past relevant work as a union representative. [Id.] The ALJ alternatively proceeded to step five, and concluded that based on plaintiff's residual functional capacity to perform a certain range of medium work, there are a significant number of jobs in the national economy that he could perform. [Id.] Accordingly, the ALJ found plaintiff not disabled. [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ: (1) improperly rejected the treating physician's testimony; (2) failed to consider the combined effect of fatigue along with plaintiff's severe cardiac impairment in assessing the RFC; (3) erred in concluding that plaintiff was capable of performing other work; and (4) improperly assessed plaintiff's credibility. Joint Stipulation ("Joint Stip.") at 3.

For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

---

[5] The ALJ found that, out of an eight hour day, plaintiff is limited to standing and/or walking for about six hours, and can sit for about six hours. He is limited from taking part in the following activities on a frequent basis: climbing ramps/stairs, stooping, kneeling, crouching, and crawling. Plaintiff can never engage in the following: climbing ladders/ropes/scaffolds, and balancing. [See AR at 202-209, 260.]

A.     THE TREATING PHYSICIAN'S OPINION

Plaintiff asserts that the ALJ improperly rejected the opinions of his treating physicians. Joint Stip. at 6-9. According to plaintiff, his doctors have "documented a continued and chronic problem" of atrial fibrillation and ventricular tachycardia. Joint Stip. at 6. Plaintiff urges that the ALJ incorrectly "reach[ed] the conclusion that [he] has the capacity to perform medium work" by "pick[ing] and choos[ing] select statements from the treating physicians." Joint Stip. at 8. Plaintiff further argues that the ALJ improperly relied upon the conclusion of the state agency physicians in assessing plaintiff's limitations and capabilities. Joint Stip. at 8.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

"However, an ALJ need not give controlling weight to the opinion of a treating physician." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). For example, the ALJ is not bound to accept a treating physician's opinion that is brief, conclusory, and not supported by clinical findings, especially when the opinion is in the form of a check-off report. Id.

"The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1159 (quoting Magallanes, 881 F.2d at 751). Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting forth specific and

legitimate reasons for doing so which are based on substantial evidence in the record. Smolen, 80 F.3d at 1285.

Here, contrary to plaintiff's assertions, the ALJ did not reject the opinions of plaintiff's treating physicians with respect to the diagnoses of atrial fibrillation and ventricular tachycardia. Indeed, the ALJ accepted those diagnoses in determining that plaintiff has a severe cardiac impairment. In concluding that plaintiff was not disabled, however, the ALJ expressly rejected the opinion of one of plaintiff's treating physicians, Dr. Syed Raza. [AR at 257-58.] In particular, the ALJ discounted Dr. Raza's November 2003 Medical Source Statement ("Statement"), in which Dr. Raza indicated that plaintiff was severely restricted with respect to his physical capabilities.[6] As set forth below, because the ALJ offered specific and legitimate reasons supported by substantial evidence from the record in rejecting this opinion by Dr. Raza, remand on this issue is not warranted.

First, in discrediting Dr. Raza's Statement, the ALJ correctly concluded that it was not based on clinical or objective findings. The record of medical evidence, which shows that plaintiff has been treated for chronic atrial fibrillation and intermittent ventricular tachycardia from 1994 to the present, supports this conclusion. For example, although plaintiff had two ablations that were unsuccessful [AR at 33-34], his physical examinations have consistently yielded generally unremarkable results. In fact, plaintiff's treating physician, Dr. Ranjiv Choudhary, remarked on numerous occasions that plaintiff appeared to be doing "remarkably" and "exceptionally" well [AR at 119, 120], was "perfectly hale and hearty" [AR at 121], and had "no ... problems at all" since beginning the medication sotalol.[7] [AR at 120.] Dr. Choudhary indicated on May 23, 2000, that

---

[6] In his assessment, Dr. Raza concluded that plaintiff could stand/walk for less than 2 hours in an 8 hour day; sit for about four hours; needs to be able to shift at will from sitting to standing or walking; needs to rest in addition to normal work breaks; needs to take unscheduled breaks totaling an hour or more; may need to lie down during breaks; and that he is incapable of even a low stress job. He limited plaintiff to frequently lifting up to ten pounds, and occasionally lifting up to twenty pounds. He further restricted plaintiff from squatting, crawling, climbing, pushing/pulling, crouching, balancing, and stooping. [AR 354-56.]

[7] Betapace, which plaintiff was prescribed, is the brand name of sotalol hydrochloride. Physicians' Desk Reference, 59th Ed. (2002) at 950.

7

plaintiff has been "stable since 1996 and he may not be allowed disability," and is "[o]verall, in excellent condition." [AR at 119.] Although plaintiff was admitted to the hospital in February 2001 after experiencing dizziness, and diagnosed with a transient ischemic attack (TIA) and chronic atrial fibrillation [AR 221-232], he was considered to be stable [AR at 236-37], and "totally asymptomatic" [AR at 238] by April 2001, while remaining at "high risk." [AR at 237.]

Also in April, 2001, plaintiff's heart rate was monitored over a twenty-four hour period. [AR at 245.] The resulting report showed the following: plaintiff's heart rhythms demonstrated chronic atrial fibrillation; rare premature ventricular contractions were noted; one short burst of ventricular tachycardia was demonstrated, but it appeared to be nonsymptomatic; and there was no dizziness. [Id.] Plaintiff underwent a cardiolite stress test on June 25, 2001, which returned normal results with "[n]o evidence for myocardial infarct or ischemia." [AR at 241.] Plaintiff was treated by Dr. Raza on September 17, 2002. [AR at 320.] During this visit, Dr. Raza noted that plaintiff is "stable from [a] cardiac point of view;" was not experiencing palpitations, dizziness, or syncopal episodes; and was "able to do his daily activities without any significant problems." [Id.] An echocardiographic report dated June 24, 2003, revealed no serious problems. [AR at 339-40.]

A Physical Residual Functional Capacity Assessment from August, 2000, concluded that plaintiff can occasionally lift 50 pounds and frequently lift 25 pounds, can stand and/or walk for a total of six hours in an eight hour work day, and can sit for the same period of time. [AR at 202-09.] He has postural limitations that prevent him from climbing and balancing [AR at 204], and an environmental limitation requiring that he avoid exposure to hazards, such as machinery and heights. [AR at 206.] Those precautions were a result of his anti-coagulant therapy and cardiac arrhythmias. [AR at 208.]

An Internal Medicine Consultation was performed by Dr. Jagvinder Singh in August, 2003. [AR at 300-06.] In his examination, Dr. Singh noted that plaintiff had an irregular heart rate, and diagnosed him with hypertension and atrial fibrillation. [AR at 303, 305.] Dr. Singh opined that plaintiff would be able to stand and/or walk for about six hours in an eight-hour workday with normal breaks, had no sitting limitations, and should avoid working in extreme temperatures and at heights. [AR at 305.]

As shown, the objective medical evidence does not substantiate Dr. Raza's restrictive opinion as set forth in the Statement. Moreover, there are no clinical test results obtained by Dr. Raza that support his ultimate conclusion regarding plaintiff's physical capabilities. In determining the RFC, the ALJ was therefore permitted to give greater weight to the opinions of Dr. Singh and the state agency doctor, which are both consistent with the objective clinical evidence. See Magallanes, 881 F.2d at 751 (when an opinion of a non-treating physician is based on objective clinical tests that differ from the treating physician's findings, the non-treating opinion may serve as substantial evidence justifying the rejection of the treating physician's opinion).

The ALJ also rejected Dr. Raza's opinion due to significant inconsistencies in his own treating notes. [AR at 258.] For example, in June, 2003, Dr. Raza indicated that plaintiff was not suitable for jobs that involved climbing poles or operating machinery. [AR at 318.] As correctly noted by the ALJ, this particular opinion was "markedly different" from the Statement prepared by Dr. Raza only five months later that essentially precluded plaintiff from all work. [AR at 258.] The ALJ also highlighted the fact that Dr. Raza remarked in September, 2002, that plaintiff was able to perform his daily activities without any significant problems. [AR at 258, 320.] There is nothing in the record indicating that plaintiff's condition took a significant turn for the worse at any time during the interval from September 2002 to November 2003 which justifies the severe restrictions set forth in Dr. Raza's Statement.

Although not expressly mentioned by the ALJ, the Court notes that the Statement at issue, consisting of a three page check-off report, was also too conclusory to be highly probative. Because Dr. Raza did not elaborate on, or otherwise explain, how plaintiff's physical impairments resulted in the functional limitations set forth on the forms, the ALJ could have rejected his opinion on that basis alone. See Magallanes, 881 F.2d at 751; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain

any explanation for the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

As shown, the lack of supporting clinical findings, and the internal inconsistencies within Dr. Raza's own treating records, constitute specific and legitimate reasons for the rejection of Dr. Raza's opinion as set forth in the Statement. The Court concludes that reversal or remand on this issue is not warranted.

**B.  PLAINTIFF'S SUBJECTIVE COMPLAINTS OF FATIGUE AND THE ALJ'S CREDIBILITY ANALYSIS**

Plaintiff asserts that he suffers from fatigue which significantly limits his ability to perform work activity. Joint Stip. at 15. He argues that the ALJ erred in not considering "the combined effect of fatigue with the severe cardiac impairment in determining [the] RFC." Joint Stip. at 16. Plaintiff also raises the argument that the ALJ improperly assessed his credibility. Joint Stip. at 25-28. Because the two issues are interconnected and require substantially the same analysis, the Court considers them jointly as set forth below.

At the hearing on November 12, 2003, plaintiff testified that he becomes exhausted very easily, and cannot do anything for more than an hour or two before needing to take a nap. [AR at 264.] He can walk five to ten minutes before needing to rest. [AR at 268-69.] According to his testimony, sitting can also tire him out, and he needs to recline to get adequate rest. [AR at 269.] Plaintiff continues to play golf two times a week, and states that by using a golf cart, he only walks a total of twenty to thirty minutes out of the four and one-half hours it takes to complete his golf game. [AR at 265-66.] After he is done playing, he takes a nap. [AR at 266-67.] Plaintiff further testified that, once or twice a month, he is too exhausted to do anything. [AR at 267.] He attributes his overwhelming tiredness to side effects from his medication. [AR at 268.] At the initial hearing in November 2001, plaintiff testified that he mows his small lawn, but requires frequent breaks in order to complete the job. [AR at 34-35.] He also stated that he can still occasionally lift 20-25 pounds, but has to rest after doing so. [AR at 36.]

In determining plaintiff's RFC, the ALJ gave consideration to plaintiff's subjective complaints, but determined that the information provided by plaintiff was not "sufficiently credible to warrant the assessment of more restrictive limitations." [AR at 258.] Because the ALJ's disbelief of plaintiff's subjective complaints was a critical factor in the decision to deny benefits, the reasons for discounting them must be supported by explicit findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient). Absent evidence of malingering, a plaintiff can only be discredited if the ALJ presents "clear and convincing" evidence for doing so. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the plaintiff's complaints." Lester, 81 F.3d at 834. Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989) ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."). If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

Here, the ALJ's credibility determination is owed deference because it is based upon specific and appropriate findings. First, the ALJ reasonably concluded that plaintiff's treatment has been routine and conservative, and his cardiac impairment remains generally under good control with medication. [AR at 258.] See Johnson, 60 F.3d at 1434 (conservative medical treatment could suggest lower level of pain and functional limitation). The ALJ also pointed out that plaintiff's exercise test returned normal results, and his physical examination findings consistently indicate "normal cardiovascular perfusion." [AR at 258.] Furthermore, although plaintiff's anticoagulation medication makes him at risk for bleeding, the ALJ commented that there is no evidence of any bleeding problems thus far. In fact, the Court notes that Dr. Raza's comment that plaintiff has to

"be careful *while at work* because of high risk of bleeding" is a strong indication the risk was not so great as to preclude all work. [AR at 218.] (Emphasis added).

As for plaintiff's allegations of overwhelming fatigue, the ALJ found that the fact plaintiff was able to play eighteen holes of golf two times a week belied his complaints. [AR at 258.] In particular, the ALJ noted that plaintiff has played golf for years despite his cardiac impairment, which indicated the sport was not an overly debilitating endeavor. Also, in testifying that it took four and one-half hours to complete the course, plaintiff contradicted his other testimony that he could only do something for a maximum of one to two hours before needing to nap. See Fair, 885 F.2d at 603-04 (ALJ can rely on evidence showing activities inconsistent with a finding of a severe impairment and discrepancies in plaintiff's statements). The ALJ further observed that, despite plaintiff's documented use of medication that may cause tiredness, plaintiff's complaints of extreme exhaustion are not reflected in the treating notes. It was reasonable for the ALJ to presume that had plaintiff been experiencing side effects of fatigue to the extent alleged, he would have likely reported those effects at some time to his treating doctors.

Plaintiff's credibility was also weakened by the fact that, contrary to his testimony that he experiences frequent dizzy spells, in several of the treating notes it is reported that he expressly denied having such episodes. [See, e.g., AR at 318, 320.] Moreover, plaintiff still drives using an unrestricted driver's license -- further evidence that his activities have not been infringed upon due to dizziness. [AR at 259.] See 20 C.F.R. §§ 404.1529, 416.929 (permitting the evaluation of, among other things, inconsistencies in the evidence, and conflicts between a claimant's statements and the rest of the evidence, to determine the extent to which symptoms affect capacity to work).

With respect to plaintiff's daily activities, the ALJ concluded that they "reflect a physically active and healthy lifestyle" and "are inconsistent with an incapacitating or debilitating condition." [AR at 259.] In support of this determination is plaintiff's testimony that he not only mows the lawn (albeit with rest breaks), but also drives (sometimes up to two hours at a time) and regularly plays golf. In addition, plaintiff reported to Dr. Singh that he performs household chores such as doing laundry and taking out the trash. [AR at 301.] Based on plaintiff's demonstrated physical

capabilities, it was not unreasonable for the ALJ to place some reliance on plaintiff's activities in determining the RFC. See Fair, 885 F.2d at 603-04.

The Court concludes that the ALJ provided clear and convincing reasons in determining that plaintiff's subjective complaints, including his allegations of fatigue, were not totally credible. Accordingly, the ALJ's credibility assessment is legally sufficient, and will not be disturbed.

**C.   THE ALJ'S FINDING AT STEP FIVE THAT PLAINTIFF IS ABLE TO PERFORM OTHER WORK**

Plaintiff argues that in determining the RFC for medium work, the ALJ: (1) failed to take into consideration Dr. Raza's opinion as set forth in the Medical Source Statement of November 2003; (2) failed to consider plaintiff's combined impairments of fatigue along with the cardiac condition; (3) improperly relied on the Medical-Vocational Guidelines; and (4) posed an improper hypothetical to the vocational expert, thus rendering the expert's testimony of no value. Joint Stip. at 18-21.

With respect to plaintiff's contentions regarding Dr. Raza's Statement and the consideration of plaintiff's alleged fatigue, the Court has already considered and rejected these arguments in the preceding sections. As for plaintiff's remaining contentions, the Court is not persuaded that relief is warranted, and rejects them as well.

"A vocational expert's testimony in a disability benefits proceeding 'is valuable only to the extent that it is supported by medical evidence.'" Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citation omitted) (where claimant's allegations of disabling pain were supported by medical evidence, and the ALJ had no clear and convincing reasons to reject such claims, pain should have formed a part of the ALJ's question to the expert). "If the assumptions in the hypothetical are not supported by the record, the opinion of the vocational expert that claimant has a residual working capacity has no evidentiary value. The most appropriate way to insure the validity of the hypothetical question posed to the vocational expert is to base it upon evidence appearing in the record, *whether it is disputed or not*." Id. at 1456 (emphasis added). See also Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) ("Because the hypothetical was incomplete, it does not

constitute competent evidence to support a finding that claimant could do the jobs set forth by the vocational expert.").

In this case, the ALJ determined at step four of the analysis that plaintiff could return to his past relevant work as a union representative, and is therefore not disabled. The ALJ also alternatively reached step five to explore what other jobs plaintiff could perform.[8] In doing so, the ALJ relied upon the testimony of the vocational expert ("VE"). In formulating his hypothetical, the ALJ adopted the conclusions made by the state agency physician and described supra, as well as certain conclusions made by Dr. Raza in his June 2003 assessment. These limitations were set forth in the hypothetical question posed to the VE.[9] [AR at 276.]

The Court concludes that the hypothetical posed by the ALJ properly encompassed all limitations that were supported by the medical evidence. In particular, the height and machinery restrictions were in line with Dr. Raza's June 2003 assessment. The remaining factors were based on the opinion of the state agency physician, which the ALJ properly found to take "full account of the mild objective findings, is more restrictive than the recommendations of the consultative examiner, and accords the claimant every reasonable benefit of the doubt." [AR at 257.] The restrictions allegedly omitted, involving plaintiff's allegations of fatigue and dizziness, were based on plaintiff's testimony and, as shown, properly discredited. Moreover, the limitations set forth in Dr. Raza's November 2003 Statement were discredited as well, and therefore not included. As such, the Court concludes that the hypothetical posed to the VE was valid.

Plaintiff's remaining argument that the ALJ impermissibly relied on the Medical-Vocational Rules is unavailing. In the decision, the ALJ stated that, in addition to the VE's testimony, the framework of Medical-Vocational Rules (the "grids") 203.07, 203.15, and 203.22 also supports the

---

[8] Plaintiff's past work as a union representative was on a part-time basis only, which, according to the vocational expert, is not considered competitive employment for Social Security purposes. [AR at 280.]

[9] The ALJ posed the following question: "I'd like you to consider a person of the Claimant's vocational background. His age, education, and work experience, and consider the assessment that the state agency [physicians] made ... And this is for lifting 50 pounds occasionally, 25 frequently. Sit, stand, walk up to 6 hours each in the normal 8-hour workday. ... Should not be required to work at heights or around dangerous, unguarded, moving machinery." [AR at 276.]

decision that plaintiff was not disabled. [AR at 259.] As shown, the ALJ properly relied on the testimony of the VE in determining if any suitable jobs were available, and merely commented that the VE's determination was consistent with the grids as well. As the ALJ's final determination of plaintiff's status with respect to disability clearly depended on the VE's testimony, and not on the grids alone, plaintiff has failed to show any defect that warrants remand.

## VI.
## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 3, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE